# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
### HAMMOND DIVISION

| | | |
|---|---|---|
| LOUIS VASQUEZ and | ) | |
| DAVID BRITTON, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | CAUSE NO.: 2:07-CV-0180-PRC |
| | ) | |
| LAKE COUNTY SHERIFF'S | ) | |
| DEPARTMENT, SHERIFF ROY | ) | |
| DOMINGUEZ, and CHIEF MARCO | ) | |
| KUYACHICH, | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION AND ORDER

This matter is before the Court on a Joint Motion for Summary Judgment [DE 23], filed by

Defendants, Lake County Sheriff's Department, Sheriff Roy Dominguez, and Chief Marco

Kuyachich on July 1, 2008. For the following reasons, the Court hereby **GRANT**S in part and

**DENIES** in part Defendants' Joint Motion for Summary Judgment.


## PROCEDURAL BACKGROUND

On May 17, 2007, Plaintiffs Louis Vasquez ("Vasquez") and David Britton ("Britton"), filed

a Complaint against the Lake County Sheriff's Department ("the Department"), Sheriff Roy

Dominguez ("Sheriff Dominguez"), and Chief Marco Kuyachich ("Chief Kuyachich") alleging that

the Defendants violated their rights under 42 U.S.C. § 1983, the United States Constitution, Indiana

State Constitution, Indiana state law, and the Lake County Rules and Regulations, by engaging in

politically motivated conduct and denying Plaintiffs their due process rights.

1

On June 5, 2007, the Defendants filed a Notice of Removal under 28 U.S.C. §§ 1441 and 1446 based on this Federal Court's original and supplemental jurisdiction over the Plaintiffs' claims.

On June 15, 2007, this case was reassigned to Magistrate Judge Paul R. Cherry. The parties filed forms of consent to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this case. Therefore, this Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c).

On June 25, 2007, Chief Kuyachich filed an Answer to Complaint and Affirmative Defenses. On July 11, 2007, the Department and Sheriff Dominguez filed an Answer to Complaint and Affirmative Defenses.

On July 1, 2008, the Defendants collectively filed a Joint Motion for Summary Judgment with an accompanying Memorandum in support. On August 19, 2008, Plaintiffs filed a Memorandum in opposition to the Joint Motion for Summary Judgment. On September 9, 2008, Defendants filed a Reply in Support of Summary Judgment.

## FACTS

### A. Vasquez's Suspensions

On August 2, 2004, Louis Vasquez was hired as a police officer for the Lake County Sheriff's Department. On November 4, 2006, Vasquez was working an approved side job at a restaurant in Merrillville, Indiana. At 10:15 p.m., Vasquez contacted Sergeant Brian Czerwinski to request the use of two hours of personal compensation time so he could begin his midnight shift two hours later because he was working off-duty at a wedding. Sergeant Czerwinki denied Vasquez's request and Vasquez reported to work on time for his midnight shift briefing and scheduling. After

starting his shift, Vasquez returned to the Merrillville restaurant, outside of his patrol district. While at the restaurant Vasquez received a call from the dispatcher, and he responded to the call on his portable radio. Sergeant Czerwinski, suspicious that Vasquez might be "double dipping," decided to visit the restaurant to see if Vasquez was still there. After arriving at the restaurant, Sergeant Czerwinski found Vasquez there inside the bar area. Sergeant Czerwinski then ordered Vasquez to return to his assigned patrol district and Vasquez complied with the order.

About a week later, Sergeant Czerwinski scheduled a meeting with Vasquez to discuss what had occurred at the restaurant. During the meeting, Sergeant Czerwinski handed Vasquez a disciplinary report and ordered Vasquez to sign it. Before signing the report, Vasquez told Sergeant Czerwinski that he had not been working his side job when Sergeant Czerwinski found him at the restaurant on November 4, 2006. After the report was filed, Patrol Commander James Tatge forwarded the report to Chief Marco Kuyachich because of the potential criminal charges associated with working two jobs at once.

After reading the report, Chief Kuyachich scheduled a meeting with Vasquez to discuss the report. Around the same time, Chief Kuyachich spoke with Sheriff Dominguez about Vasquez and told the Sheriff that Vasquez had been working a side job while on duty. Before involving the prosecutor's office, Chief Kuyachich called a meeting of himself, Vasquez, Patrol Commander Tatge, and Commander Cathy Hrebenyak on November 21, 2006. According to Vasquez, at the meeting he was confronted and interrogated about the events that transpired on November 4, 2006. After the meeting adjourned, Chief Kuyachich asked Vasquez to stay in his office for further discussion. According to Vasquez, Chief Kuyachich stated that he was disappointed with Vasquez

and his brother for supporting John Buncich[1] and told Vasquez that his getting hired was a political favor. Chief Kuyachich admitted at his January 24, 2008 deposition that during his discussion with Vasquez after the November 21, 2006 meeting, he talked about Buncich and putting up signs for political candidates.

Following the November 21, 2006 meeting, Chief Kuyachich ordered Cathy Hrebenyak to conduct an investigation to determine whether Vasquez was working a side job while on patrol duty. On November 30, 2006, Hrebenyak completed her investigation and concluded that Vasquez had not committed the criminal offense of "double dipping." Hrebenyak's investigation summary was forwarded to Chief Kuyachich and Sheriff Dominguez's office for disposition.

No one informed Vasquez that he had been cleared on the allegation of "double dipping." According to Chief Kuyachich, he assumed that Hrebenyak had spoken with Vasquez about the results of her investigation. Notwithstanding the results of Hrebenyak's investigation, on January 26, 2007, Chief Kuyachich suspended Vasquez, without pay, for two days. On January 30, 2007, an e-mail was sent to a few members of the Department containing Personnel Order 2007-014, which stated that Vasquez had been suspended for two days without pay. Neither the e-mail nor the suspension Order explained the reason why Vasquez had been suspended.

It was only through Mario Orueta, Vasquez's brother, that Vasquez learned of his impending suspension. Following his normal days off, Vasquez returned to work but was then given the Order indicating that he was suspended for two days without pay. Vasquez contacted Patrol Commander Tatge to ask why he had been suspended. Tatge responded that he did not know the reason for

---

[1] In November of 2002, Sheriff Roy Dominguez was elected as the Lake County Sheriff, taking the place of incumbent-Sheriff John Buncich. In May 2006, Mr. Buncich opposed Sheriff Dominguez in the 2006 democratic primary election for the office of Sheriff.

Vasquez's suspension.  After he had spoken with his direct supervisor, corporal, sergeant, and commander without receiving a reason why he was suspended, Vasquez went to Chief Kuyachich's office to demand an answer.  When Vasquez arrived at Chief Kuyachich's office he was not in, so Vasquez contacted Dan Murchek, President of the Lake County Police Association ("Union") to determine if a grievance could be filed with the Union or Fraternal Order of Police ("FOP").  Ultimately, Vasquez never actually filed a grievance himself.  Unknown to Vasquez, Union President Murchek contacted Tim Downes, State President of the FOP, and Chief Kuyachich about the matter.

On February 7, 2007, while Vasquez was finishing up some paperwork, Chief Kuyachich walked by and ordered Vasquez to step into a nearby office.  According to Vasquez, while in the office, Chief Kuyachich began to question Vasquez about his intention in filing a grievance against him.  Vasquez responded that, in fact, he had not filed a grievance but simply wanted to know why he had been suspended.  In response to Vasquez's answers, Chief Kuyachich told Vasquez he did not have to tell him anything.  Vasquez stated that he had an issue with Chief Kuyachich's comments regarding his support of John Buncich.  At that point, according to Vasquez, Chief Kuyachich became enraged and said, "I could suspend you for fifteen days if I like and you can't do anything about it."

After the February 7, 2007 incident with Chief Kuyachich, Vasquez was given permission by Patrol Commander Tatge to speak with Sheriff Dominguez about the incident.  Prior to meeting with Vasquez, Sheriff Dominguez learned of the incident between Vasquez and Kuyachich from Deputy Chief Kumstar who told the Sheriff that Vasquez had been yelling at Kuyachich.  Sheriff Dominguez did not order that an investigation be conducted regarding what took place.  On

February 21, 2007, Vasquez filed a written complaint against Chief Kuyachich on a Lake County Police Disciplinary Report (the "Complaint") and referred it to the Sheriff. Sheriff Dominguez found the Complaint by Vasquez to be disrespectful toward his superiors. Sheriff Dominguez did not speak with Vasquez or Chief Kuyachich about the Complaint.

On February 23, 2007, Sheriff Dominguez suspended Vasquez for an additional fifteen days. Accompanying the suspension paperwork was a copy of the Complaint filed by Vasquez against Chief Kuyachich, and an unsigned Lake County Court Security Disciplinary Report dated March 22, 2007, wherein Vasquez was charged with "insubordination and disrespect to a superior officer."

In July 2007, Vasquez was transferred, without request, from the patrol division to the civil division of the Department.

## B. Britton's Transfer and Suspensions

In March 1996, David Britton was hired as a police officer for the Lake County Sheriff's Department. In July 2005, the Department posted an employment opening in its crime lab. Officer Britton, a patrolman at that time, was unexpectedly transferred from the patrol division to the crime lab. According to his supervisors, Britton was transferred because he was the newest supervisor and Patrol Commander Tatge was displeased with his performance. However, Commander Tatge denies having told then-Chief Gary Martin that he was displeased with Britton's performance. Following Britton's transfer to the crime lab, he spoke with then-Deputy Chief Kuyachich and then-Chief Martin about not wanting to work in the crime lab for personal reasons. Thereafter, Britton sent a letter to the Sheriff requesting that he be transferred out of the crime lab because working violent crime scenes was having an adverse effect on his mental well being. Britton's letter went

unanswered.  Britton later wrote a letter to then-Deputy Chief Kuyachich urging him to reconsider his transfer.

In May 2006, Sheriff Dominguez was opposed by John Buncich in the democratic primary election for the office of Sheriff.  During that political campaign, Britton was an open and active supporter of Buncich.

In December 2006, the Union sponsored the Sheriff's "Shop With a Cop"[2] Program ("Program") for needy children.  Britton, as Vice President of the Union, was in charge of running the Program.[3]  On December 16, 2006, Britton participated in the Program.  Karen Kuyachich, the wife of then-Deputy Chief Kuyachich, arranged for Mary Beth Ginalski, the Principal of Ridgeview Elementary School in Hobart, to help run the program at a grocery store in Merrillville, Indiana.  During the Program at that store, a small conflict arose about how many toys a child could buy, upon which Ginalski contacted Mrs. Kuyachich to see what she should do.  Mrs. Kuyachich resolved the dispute.  According to Mrs. Kuyachich, Ginalski approached her later that evening and told her that a man had called Mrs. Kuyachich a "fucking bitch."  Mrs. Kuyachich found out that Britton was the man Ginalski referred to and confronted him about his alleged comment.  Britton claimed that he was not talking about her.  Ginalski also told Hrebenyak about what had happened.  Hrebenyak decided not to take action against Britton because he was not acting as a police officer, but as Vice President of the Union, at the time of the alleged incident.

On January 29, 2007, Ginalski wrote a letter and asked Mrs. Kuyachich to deliver it to the

---

[2] Plaintiffs refer to the program as "A Christmas to Remember."

[3] The Program consists of the Union donating money to provide needy families with the opportunity to shop for the holiday accompanied by a police officer.  The Program rules entitle each child to spend roughly $100.00 on clothes and on one toy.

Sheriff. Before giving the letter to her husband, Chief Kuyachich, to deliver to the Sheriff, Mrs. Kuyachich read it. Upon receiving the letter, Sheriff Dominguez ordered Hrebenyak to conduct an investigation regarding the incident, but none was conducted. Despite no investigation being conducted, on February 26, 2007, pursuant to Sheriff Dominguez's Orders, Hrebenyak prepared a disciplinary complaint against Britton, which was signed by Dominguez. The next day, Britton was given the Order suspending him for ten days without pay for "conduct unbecoming an officer, failure to treat another officer or civilian or any other person civilly and courteously, and any act which brings or tends to bring the individual of the department into disrepute." Defs.' Mem. Supp. Summ. J. 9. Included in the report was the letter written by Ginalski to the Sheriff. After reading the Complaint, Britton informed Hrebenyak that it was not correct because the report stated that he was acting as a police officer and wearing a police badge, when instead he wore a Lake County Police Association jacket with no badge at the time of the alleged incident. Hrebenyak then ordered Britton to sign the report, but Britton refused because he alleged it was inaccurate. Hrebenyak again ordered Britton to sign the report, so he placed an "X" on the signature line. At that point, according to Defendants, Hrebenyak ordered Britton to turn in his weapon, badge, credentials, and vehicle keys. Britton refused, and thus, Hrebenyak completed another Disciplinary Report alleging that Britton refused to surrender his weapon and credentials. Britton testified at his January 22, 2008 deposition that he was not asked to surrender his weapon and credentials until after he met with Sheriff Dominguez, and at that point he did so. While serving his ten day suspension, Britton received an additional fifteen day suspension without pay on March 13, 2007, for failing to comply with a direct order.

**SUMMARY JUDGMENT STANDARD**

The Federal Rules of Civil Procedure mandate that motions for summary judgment be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Rule 56(c) further requires the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "[S]ummary judgment is appropriate–in fact, is mandated–where there are no disputed issues of material fact and the movant must prevail as a matter of law. In other words, the record must reveal that no reasonable jury could find for the non-moving party." *Dempsey v. Atchison, Topeka, & Santa Fe Ry. Co.*, 16 F.3d 832, 836 (7th Cir. 1994) (citations and quotation marks omitted).

A party seeking summary judgment bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. *See Celotex*, 477 U.S. at 323. The moving party may discharge its "initial responsibility" by simply "'showing'–that is, pointing out to the district court–that there is an absence of evidence to support the non-moving party's case." *Id.* at 325. When the non-moving party would have the burden of proof at trial, the moving party is not required to support its motion with affidavits or other similar materials negating the opponent's claim. *See id.* at 323, 325; *Green v. Whiteco Indus., Inc.*, 17 F.3d 199, 201 n.3 (7th Cir. 1994); *Fitzpatrick v. Catholic Bishop of Chi.*, 916 F.2d 1254, 1256 (7th Cir. 1990). However, the

9

moving party, if it chooses, may support its motion for summary judgment with affidavits or other materials and thereby shift to the non-moving party the burden of showing that an issue of material fact exists. *See Kaszuk v. Bakery & Confectionery Union & Indus. Int'l Pension Fund*, 791 F.2d 548, 558 (7th Cir. 1986); *Bowers v. DeVito*, 686 F.2d 616, 617 (7th Cir. 1982).

Once a properly supported motion for summary judgment is made, the non-moving party cannot resist the motion and withstand summary judgment by merely resting on its pleadings. *See* Fed. R. Civ. P. 56(e)(2); *Donovan v. City of Milwaukee*, 17 F.3d 944, 947 (7th Cir. 1994). Rule 56(e) establishes that the opposing party's "response must–by affidavits or as otherwise provided in this rule–set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-50 (1986). Thus, to demonstrate a genuine issue of fact, the non-moving party must do more than raise some metaphysical doubt as to the material facts; the non-moving party must come forward with specific facts showing that there is a genuine issue for trial. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

In viewing the facts presented on a motion for summary judgment, a court must construe all facts in a light most favorable to the non-moving party and draw all legitimate inferences in favor of that party. *See Anderson*, 477 U.S. at 255; *NLFC, Inc. v. Devcom Mid-Am., Inc.*, 45 F.3d 231, 234 (7th Cir. 1995); *Doe v. R.R. Donnelley & Sons Co.*, 42 F.3d 439, 443 (7th Cir. 1994). A court's role is not to evaluate the weight of the evidence, to judge the credibility of witnesses, or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. *See Anderson*, 477 U.S. at 249-50; *Doe*, 42 F.3d at 443.

## ANALYSIS

### A. Capacity in which the suit is brought

As a preliminary matter, the Defendants contend that the claims against Chief Kuyachich and Sheriff Dominguez were brought against them solely in their official capacity because Plaintiffs captioned their Complaint as a suit against "Sheriff Roy Dominguez, and Chief Marco Kuyachich." Pls.' Compl. 1.

The Seventh Circuit has previously held that a presumption exists that a suit was brought against a defendant in his official capacity when the caption of the complaint refers to the defendant by his official title.[4] *Kolar v. County of Sangamon*, 756 F.2d 564, 568 (7th Cir. 1985). Furthermore, the Seventh Circuit provided that a complaint alleging that the public official's conduct gives rise to liability under § 1983 also creates a presumption that the defendant was sued in his official capacity. *Id.* However, the Seventh Circuit later limited its holding in *Kolar* to cases in which the complaint specifically refers to the title of the public official and when "the indicia of an official policy or custom are present in the complaint." *Hill v. Shelander*, 924 F.2d 1370, 1373 (7th Cir. 1991).

The Seventh Circuit later adopted a new standard for construing whether a suit was brought against a defendant in his official or individual capacity. *Id.* at 1374. The new standard requires the court to look to the relief requested to determine the plaintiff's intent, because "injunctive relief against a state official may be recovered only in an official capacity suit, so may punitive damages be recovered against a government actor only in an individual capacity suit." *Id.* Moreover, the

---

[4] In *Kolar*, the Seventh Circuit found that the suit was brought against the defendants in their official capacity where the complaint referred to the defendants as "Gerald M. Sonquist, Kenosha County Sheriff" and "Carl Thomas, Sheriff." *Id.* at 568.

court may look to the alleged conduct at issue. *Id.* If the official's individual actions are at issue, it is a suit in an individual capacity, whereas if the conduct is according to an official policy or custom, the suit is one in the official capacity. *Id.*

More recently, the Seventh Circuit has clarified its previous holdings and expressly rejected its holding in *Kolar*, reaffirming its approach in *Hill*. *Miller v. Smith*, 220 F.3d 491, 494 (7th Cir. 2000). Furthermore, when a defendant raises the defense of qualified immunity, the defendant concedes plaintiff's intention to bring an individual capacity suit because qualified immunity is "a defense available solely to officials facing § 1983 suits in their *individual* capacities." *Id.* (emphasis added).

Here, the Plaintiffs' Complaint contains the caption "Sheriff Dominguez, and Chief Kuyachich," which under the Seventh Circuit's former position would have created a presumption that the suit was filed against the officers only in their official capacity. But the Seventh Circuit now requires this Court to look to the relief requested to determine the Plaintiffs' intent in the instant matter. The Complaint here requests compensatory and punitive damages for the violation of Plaintiffs' constitutional rights by the officers' individual actions.

In addition, in their Joint Motion for Summary Judgment, the Defendants raise the defense of qualified immunity, which under the Seventh Circuit's recent holdings presumes that the Defendants knew that the suit was against Sheriff Dominguez and Chief Kuyachich in their individual capacity. Therefore, this Court construes Plaintiffs' Complaint as alleging a cause of action against Defendants Dominguez and Kuyachich in both their individual and official capacities.

## B. Claims arising under § 1983

Section 1983 of Title 42 of the United States Code guarantees:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceedings for redress . . . ."

To succeed on a claim brought under § 1983, the plaintiff must allege that the injurious acts were performed "under color of state law," and that the injurious acts deprived the plaintiff of "rights, privileges, or immunities secured by the Constitution or laws of the United States." *Bayview-Lofberg's Inc. v. City of Milwaukee*, 905 F.2d 142, 144 (7th Cir. 1990).

### 1. Deprivation of property interest

To prevail on a due process violation claim, Plaintiffs must show (1) that they had "a constitutionally protected property interest," (2) that they were deprived of that property interest, and (3) that the deprivation occurred without due process of law. *Kiddy-Brown v. Blagojevich*, 408 F.3d 346, 360 (7th Cir. 2005). Both Vasquez and Britton argue that the Defendants wrongfully suspended them and, in doing so, denied them both of their rights to due process of law. Plaintiffs claim that Ind. Code § 36-8-10-11 and the Lake County Rules and Regulations afford them with a protected property interest not to be suspended without due process. The Court will evaluate both in turn.

Property interests are not created by the Constitution; they are established by state law. *Board of Regents v. Roth*, 408 U.S. 564, 577 (1972). A protected property interest can arise from a state statute, regulation, or contract. *Moulton v. Vigo County*, 150 F.3d 801, 804 (7th Cir. 1998).

Ind. Code § 36-8-10-11(a) provides, in part, that "[t]he sheriff may dismiss, demote, or

temporarily suspend a county police officer for cause after preferring charges in writing and after a fair public hearing before the board, which is reviewable in the circuit court." Further, Ind. Code § 36-8-10-11(b) provides that "[t]he sheriff may temporarily suspend an officer with or without pay for a period not exceeding fifteen (15) days, without a hearing before the board . . . ."

The Indiana Supreme Court has held that Ind. Code § 36-8-10-11(a) creates a legitimate claim of entitlement by Sheriff's Deputies to their jobs, such that constitutional due process protections apply when a Deputy may lose his or her job. *McCorkle v. Henry County*, No. 1:04-CV-1942-DFH-TAB, 2006 WL 1547082, *4 (S.D. Ind. June 1, 2006) (citing *Marion County Sheriff's Merit Board v. Peoples Broadcasting Corp*., 547 N.E.2d 235, 239 (Ind. 1989)).

By contrast, Indiana state courts have not determined specifically whether Ind. Code § 36-8-10-11(b) creates a protected property interest. However, in dealing with a similar statute, the Indiana Court of Appeals determined that there was no protectable property interest. *State ex rel. Dunlap v. Cross*, 403 N.E.2d 885, 888 (Ind. App. Ct. 1980). There, the statute[5] provided that a police officer could be suspended up to and including ten days without pay and without judicial review. *Id.* at 886. The plaintiff challenged his suspension of less than ten days. *Id.* at 887. The court found that the statute was unambiguous in prohibiting judicial review for suspensions that did not exceed ten days. *Id.* at 888. Accordingly, by statute, the plaintiff did not have a protectable property interest in a suspension that failed to exceed ten days. *Id.*

Further, the Seventh Circuit has found that no property right existed where a state statute allowed a public employee to be suspended up to fifteen days without a hearing. *See Listenbee v.*

---

[5] The statute, Ind. Code § 18-1-11-3 (1971), provided that "any member of such . . . police force who . . . is suspended therefrom in excess of ten (10) days shall have the right to appeal to the circuit or superior court of the county in which the city is located . . . ."

*City of Milwaukee*, 976 F.2d 348, 353 (7th Cir. 1992). There, a statute similar to § 36-8-10-11(a) created a property right in a public employee's employment. *Id.* at 352. However, another section of the same statute, like § 36-8-10-11(b), allowed for a suspension of up to fifteen days without a hearing. *Id.* at 351. Accordingly, the Seventh Circuit held that although the plaintiff had a property right in continued employment, she did not have a property right in continuous employment. *Id.* at 354.

Although § 36-8-10-11(a) creates a property interest in continued employment, the scope of this property interest is limited by § 36-8-10-11(b). When Sheriff Dominguez suspended Vasquez and Britton for fifteen days each, he was acting pursuant to his statutory authority under § 36-8-10-11(b), which states that "[t]he sheriff may temporarily suspend an officer with or without pay for a period not exceeding fifteen (15) days, without a hearing before the board . . . ." Indiana Courts and the Seventh Circuit have upheld suspensions imposed under similar statutes. *See Listenbee*, 976 F.2d at 354; *Cross*, 403 N.E.2d at 888. Accordingly, this Court finds that although Vasquez and Britton have a property interest in continued employment under § 36-8-10-11(a), they did not have a property interest in continuous employment because of § 36-8-10-11(b)'s limitations.

Next, Vasquez and Britton argue that the Lake County Sheriff's Rules and Regulations ("Rules and Regulations") create a protected property interest from being suspended from employment without due process of law. The only section of the Rules and Regulations with which the Plaintiffs have provided this Court is Section 8.01.00. After reviewing this Section, the Court does not find that it creates a protected property interest. First, Section 8.01.00 of the Rules and Regulations does not pertain to the demotion, suspension, or termination of the Department's officers, but establishes a formal process of investigation of complaints filed against a deputy.

Second, Section 8.01.00 was followed by the Department in processing and investigating the complaints filed against Vasquez. A week after the incident at the Merrillville restaurant, Sergeant Czerwinski held a meeting with Vasquez to discuss what occurred at the restaurant. At that point, Sergeant Czerwinski provided Vasquez with a written disciplinary report, which Vasquez objected to. After that meeting, Sergeant Czerwinski forwarded the report to Commander Tatge who then forwarded it to Chief Kuyachich. Chief Kuyachich called a meeting between himself, Vasquez, Commander Tatge, and Cathy Hrebenyak. During this meeting, Chief Kuyachich informed Vasquez of the charges against him, and gave him the opportunity to respond. Following the meeting, Chief Kuyachich ordered Cathy Hrebenyak to conduct a formal investigation to determine whether Vasquez had been working a side job while on patrol duty. Thus, the Department complied with Section 8.01.00.

With regard to Britton's claim, the Rules and Regulations were arguably not followed. However, given that this Court finds that the Rules and Regulations do not create a property interest, the Defendants' failure to follow the Rules and Regulations with regard to Britton's suspension has no bearing on Britton's claim.

Accordingly, this Court finds that Section 8.01.00 of the Rules and Regulations does not create a substantive property interest with regard to suspension of employment because Section 8.01.00 does not refer to demotions, suspensions, or termination, but, rather, establishes a formal process of investigation. With regard to Vasquez, the Rules and Regulations were complied with and in Britton's case, the failure to follow the Rules and Regulations is inconsequential.

Because this Court finds that Vasquez and Britton have failed to raise a genuine issue of material fact as to whether I.C. § 36-8-10-11 and the Lake County Rules and Regulations create a

protected property interest, Plaintiffs' due process claims fail.  Therefore, the Defendants' Joint

Motion for Summary Judgment is granted as to the Vasquez's and Britton's due process claims

under § 1983.

*2. Retaliation based upon political affiliation*

It is well established constitutional law that "hiring, firing, or transferring" government

employees because of political motivation is a violation of the First Amendment, except when the

employee is in a policymaking position or in a confidential relationship with a superior.  *Hall v.*

*Babb*, 389 F.3d 758, 762 (7th Cir. 2004).  To establish a prima facie case of a First Amendment

violation, the employee must prove that the employee's conduct was "constitutionally protected"

and "that the protected conduct was a substantial or motivating factor in the employment decision."

*Id.*  Once the employee has established a prima facie case, the "burden shifts to the defendant to

demonstrate a legitimate, nonpolitical reason for the employment decision."  *Id.*.

"Nothing is more basic to the American system of governance than the speaking out on

behalf of the candidate of one's choice."  *Biddle v. City of Fort Wayne*, 591 F. Supp. 72, 85 (N.D.

Ind. 1984).  Courts in the Seventh Circuit have protected the rights of public employees to either

support, or refuse to support, a political candidate of their own choice.  *See De Mauro v. Loren-*

*Maltese*, No. 98 C 8318, 2000 WL 116079, *5 (N.D.Ill. Jan. 24, 2000)*; Biddle,* 591 F. Supp. at 85

(finding that plaintiff's endorsement of a candidate who opposed the incumbent mayor was protected

activity under the First Amendment).

Here, the parties agree that Vasquez's two day suspension was not politically motivated.

Thus, the Defendants did not violate Vasquez's First Amendment rights when they issued him a two

day suspension.  However, the imposition of the additional fifteen day suspension does not

necessarily lead to the same result. Both parties offer reasons as to why Vasquez was suspended for fifteen days. Vasquez asserts that it was based on his political affiliation with, and campaigning for, John Buncich, while the Defendants argue that it was due to "insubordination and disrespect to a superior officer." Defs.' Mot. Summ. J. 7. After the November 21, 2006 meeting, Vasquez alleges that Chief Kuyachich brought up Vasquez's support for Buncich. At Chief Kuyachich's January 24, 2008 deposition, he admitted bringing up Buncich and talking about putting up political signs for candidates. Based on the differing factual scenarios and construing the facts in the light most favorable to the Plaintiff, this Court hereby denies the Defendants' Joint Motion for Summary Judgment as there are genuine issues of material fact as to whether Plaintiff Vasquez's fifteen day suspension was politically motivated.

By contrast, to the minimal extent that Britton alleges that his transfer to another department was politically motivated, he fails to raise a genuine issue of material fact. Britton alleges that his July 2005 transfer was made in retaliation for his support of John Buncich. The extent of Britton's allegations are merely that he was a Buncich supporter and that then-Deputy Chief Kuyachich saw Buncich and him together. However, Britton fails to offer, or even allege, any evidence indicating the circumstances under which he and Buncich were seen together. Further, even the evidence[6] that Britton relies upon for the allegation that he and Buncich were seen together indicates that Chief Kuyachich did not know if Britton was supporting Buncich. Accordingly, Britton fails to raise a genuine issue of material fact as to whether his First Amendment rights were violated by a politically motivated transfer. Accordingly, Defendants' Joint Motion for Summary Judgment must

---

[6] Britton relies on excerpts of Chief Kuyachich's January 24, 2008 deposition to support his claim that Chief Kuyachich saw he and Buncich together.

be granted as to Plaintiff Britton's First Amendment claim.

*3. Official Capacity and Municipal Liability claims*

Turning now to the claims against the Department and against Chief Kuyachich and Sheriff Dominguez, in their official capacity, because an "official capacity suit is tantamount to a claim against the government entity itself," the Court reviews the claims together. *Guzman v. Sheahan*, 495 F.3d 852, 859 (7th Cir. 2007). In order to establish an official capacity claim against Chief Kuyachich and Sheriff Dominguez, and municipal liability against the Department, Vasquez and Britton must demonstrate that the deliberate indifference they suffered came about as a result of a custom or policy established by the officials. *See Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690-91 (1978). In this context, three forms of unconstitutional policies or customs have been recognized:

> (1) an express policy that, when enforced, causes a constitutional deprivation; (2) a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or used with the force of law; or (3) an allegation that the constitutional injury was caused by a person with final policy-making authority.

*Klebanowski v. Sheahan*, 540 F.3d 633, 637 (7th Cir. 2008) (quoting *Palmer v. Marion County*, 327 F.3d 588, 595 (7th Cir. 2003)).

Here, neither Vasquez nor Britton invoke an express policy or widespread practice, rather, they argue that their constitutional injuries were caused by Sheriff Dominguez because he is empowered with final policy-making authority. "[W]hether a particular official has 'final policymaking authority' is a question of state law." *St. Louis v. Praprotnik*, 485 U.S. 112, 123 (1988). Under Indiana law, a Sheriff is empowered with the authority to set municipal liability, particularly in disciplinary matters. *Wood v. Marion County Sheriff*, 1:02CV1450-RLY-VSS, 2005

WL 1528226, *3 (S.D. Ind. June 23, 2005). Sheriff Dominguez's policymaking authority is expressly codified in Ind. Code. § 36-8-10-11(b), which provides that "[t]he sheriff may temporarily suspend an officer with or without pay for a period not exceeding fifteen (15) days, without a hearing before the [merit] board." *Id.* at *3. Because the Plaintiffs' suspensions were each for fifteen or less days, Sheriff Dominguez's decisions were not reviewable by the board. Thus, Sheriff Dominguez was the final policymaker. *See id.*

As previously stated, because this Court finds that Vasquez has offered sufficient evidence for a jury to decide whether Sheriff Dominguez, acting in his official capacity, caused Vasquez's First Amendment deprivation, Defendants' Joint Motion for Summary Judgment must be denied as to Vasquez's official capacity and municipal liability claims. However, the Defendants' Joint Motion for Summary Judgment must be granted as to Britton's official capacity and municipal liability claims as he suffered no due process or First Amendment violation.

### 4. Federal labor law claim

In Plaintiffs' Response brief to Defendants' Joint Motion for Summary Judgment, Vasquez raises a new argument that both Sheriff Dominguez and Chief Kuyachich violated federal labor law by suspending him for exercising his right to file a grievance. As the Defendants correctly point out, Plaintiff may not "amend his complaint through arguments in his brief in opposition to a motion for summary judgment." *Shanahan v. City of Chicago*, 82 F.3d 776, 781 (7th Cir. 1996); *Wachovia Securities, LLC. v. Neuhauser*, 528 F. Supp. 2d 834, 849 (N.D. Ill. 2007) (stating a plaintiff may not "amend its pleadings through allegations made in response to a summary judgment motion"). The Court has reviewed Plaintiffs' Complaint and has failed to find any instance in which a labor law claim was plead. Rather, the first time any facts alleging such a claim were brought up was in

Plaintiffs' Response brief to Defendants' Joint Motion for Summary Judgment. Accordingly, Vasquez's attempt to amend his Complaint and assert a claim under federal labor law by way of a new argument in response to Defendants' Joint Motion for Summary Judgment was improper and is hereby denied.

*5. Qualified Immunity*

The Defendants next contend that Sheriff Dominguez and Chief Kuyachich are entitled to qualified immunity against Plaintiffs' claims because they were performing discretionary functions. Plaintiffs contend that genuine issues of material fact exist as to the events surrounding their suspensions, and that Sheriff Dominguez and Chief Kuyachich are not entitled to qualified immunity.

Government officials performing discretionary functions are protected from liability by qualified immunity. *Leaf v. Shelnutt*, 400 F.3d 1070, 1079 (7th Cir. 2005) (citing *Anderson v. Creighton*, 483 U.S. 635, 638-39 (1987)). Qualified immunity is broad and provides protection to "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). Qualified immunity leaves "'ample room for mistaken judgments' by police officers." *Payne*, 337 F.3d at 776 (quoting *Malley*, 475 U.S. at 343). It does not protect officers, however, if they (1) violate clearly established law (2) that a reasonable officer should have known about. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

The qualified immunity inquiry is two-fold. First, a court must determine whether, "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the [defendant's] conduct violated a constitutional right?" *Crull v. Sunderman*, 384 F.3d 453, 460 (7th Cir. 2004) (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). Second, the court must determine

if the right was clearly established at the time of the violation.  *Id.*

Considering whether a constitutional violation occurred, the court is to examine the facts in a light most favorable to the party asserting an injury and determine whether "the facts alleged show the officer's conduct violated a constitutional right[.]"  *Saucier v. Katz*, 533 U.S. 194, 201 (2001).  "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity" and immunity is proper.  *Id.*  Should a constitutional violation be found to have occurred, it must be shown that the unlawfulness of the officer's actions was "apparent" from pre-existing law.  *Anderson*, 483 U.S. at 640.  A violation is sufficiently apparent if it "would be clear to a reasonable officer that the conduct was unlawful in the situation he confronted."  *Saucier*, 533 U.S. at 194-95 (citing *Wilson v. Layne*, 526 U.S. 603, 615 (1991)).

As previously analyzed under Vasquez's First Amendment claim, taken in the light most favorable to Vasquez, the facts alleged by him show that a constitutional violation occurred due to the fact that Chief Kuyachich brought up his political affiliation with John Buncich prior to suspending Vasquez for fifteen days.  Accordingly, Vasquez satisfies the first prong of the qualified immunity analysis.

In addition, viewing the facts in the light most favorable to Vasquez, the rights allegedly violated were clearly established such that a reasonable officer should have known of them at the time of the alleged violation.  Seventh Circuit precedent is clear that an employee cannot be suspended because of political motivation as such retaliatory conduct violates the First Amendment.  *See Hall*, 389 F.3d at 762.  Employees are protected by the First Amendment when they support, or refuse to support, a political candidate of their own choice.  *Biddle*, 591 F. Supp. at 85.  Thus, the

allegations in Vasquez's claim satisfy both prongs of the qualified immunity analysis and raise a genuine issue of material fact. Therefore, this Court denies the Defendants' Joint Motion for Summary Judgment on the issue of whether Sheriff Dominguez and Chief Kuyachich were entitled to qualified immunity.[7]

*6.  Punitive damages*

The Defendants argue that under § 1983 a public official sued in his official capacity cannot be liable for punitive damages. As noted previously, an "official capacity suit is tantamount to a claim against the government entity itself." *Guzman*, 495 F.3d at 859. To that end, a "municipality is immune from punitive damages under 42 U.S.C. § 1983." *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981). As to the Defendants in their individual capacity, the Supreme Court has stated that punitive damages may be assessed against public officials being sued in their individual capacity when the defendant's conduct is "shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Smith v. Wade*, 461 U.S. 30, 56 (1983). However, Plaintiffs have failed to address the issue of punitive damages in their Response brief to Defendant's Motion for Summary Judgment and, therefore, any such relief has been waived by them. *See Palmer v. Marion County,* 327 F.3d 588, 597 (7th Cir. 2003) (holding that claims not addressed in a summary judgment opposition brief are deemed abandoned); *Laborers Int'l Union of N. Amer. v. Caruso*, 197 F.3d 1195, 1197 (7th Cir. 1999) (stating that arguments not presented to the district court in response to summary judgment motions are waived).

---

[7] Given that the Court has found that Britton suffered no constitutional injury, qualified immunity need not be analyzed as to his claim.

## C. Claims arising under State law

The Plaintiffs argue that their suspensions not only violated federal law, but also Indiana law under Ind. Code § 36-8-10-11(c). Because the same facts and analysis comprise the federal claim and the state claim, this Court finds that Vasquez has offered sufficient evidence to create a genuine issue of material fact as to whether Sheriff Dominguez, acting in his official capacity, violated Ind Code § 36-8-10-11(c) so Defendants' Joint Motion for Summary Judgment must be denied. However, the same cannot be said for Britton's state claims and Defendants' Joint Motion for Summary Judgment is granted as to his state law claims.

## CONCLUSION

Based on the foregoing, the Court hereby **GRANTS** in part and **DENIES** in part Defendants' Joint Motion for Summary Judgment [DE 23]. The Court **GRANTS** summary judgment as to all of Britton's claims against the Defendants, and Vasquez's due process claim under 42 U.S.C. § 1983 against the Defendants.

However, the Court **DENIES** the Motion for Summary Judgment as to: (1) Vasquez's First Amendment claim under 42 U.S.C. § 1983 against the Defendants and (2) Vasquez's state claim under Ind. Code § 36-8-10-11(c) against the Defendants. This matter remains set for Final Pre-Trial Conference on December 19, 2008, and for Jury Trial on January 26, 2009.

SO ORDERED this 25th day of November, 2008.

 s/ Paul R. Cherry
MAGISTRATE JUDGE PAUL R. CHERRY
UNITED STATES DISTRICT COURT

cc:     All counsel of record